UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALSHAFI TATE, | ) |
| Plaintiff, | ) |
| v. | ) Cause No.: 1:05-CV-47 |
| EXECUTIVE MANAGEMENT SERVICES, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment filed by Defendant Executive Management Services, Inc. ("EMS") on December 21, 2005. After having been granted an extension of time in which to do so, Plaintiff Alshafi Tate ("Tate") filed a response in opposition to the motion on February 3, 2005, and EMS filed a reply on March 3, 2006. Then, on March 8, 2006, EMS filed a Notice of Partial Withdrawal of Motion for Summary Judgment and Tate filed a Motion to File Sur-Reply. The motion for permission to file a sur-reply was granted on March 9, 2006, and Tate's sur-reply brief was docketed on that same date.

For the reasons discussed herein, the motion for summary judgment is DENIED.

**PROCEDURAL BACKGROUND**

In addition to the motion for summary judgment, other motions and notices were filed in this case, but they have since been resolved. On February 24, 2006, EMS filed a Motion for Leave to File a Second Amended Answer (Docket at 44), to which Tate filed a response in opposition on February 27, 3006 (Docket at 45). Then, on April 6, 2006, EMS filed a Notice of Withdrawal of its motion for leave to file an amended answer. Docket at 52. On April 10, 2006, Magistrate Judge Cosbey, to whom this case is on partial referral, issued an Order formally

acknowledging that EMS's motion was withdrawn. Docket at 53.

Then, on April 13, 2006, the court held a conference in this case in order to ensure that the record was clear with regard to the issues to be addressed in the pending motion for summary judgment. When the motion was originally filed, EMS sought summary judgment on all of Tate's claims, which included race discrimination, sex discrimination, and retaliation. EMS based its motion mostly on a judicial estoppel argument. However, just after the briefing was concluded, the Seventh Circuit Court of Appeals issued an opinion which foreclosed EMS's judicial estoppel argument. EMS promptly filed a Notice of Partial Withdrawal of Motion for Summary Judgment, conceding that the recent appellate court opinion eliminated the legal basis for the company's argument. Docket at 47. In addition, during the conference on April 13, Tate withdrew his race discrimination claim in this case. The parties agreed that genuine issues of fact exist with regard to Tate's sex discrimination claim, and they are prepared to proceed to trial on that claim. As a result of these developments, the only claim this court is now called upon to resolve is Tate's claim that his termination from employment with EMS was retaliatory.[1]

## FACTUAL BACKGROUND

Tate brought this action on February 4, 2005. In his Complaint, Tate alleges that EMS discriminated against him in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.) and 42 U.S.C. § 1981. Complaint, Docket at 1, pp. 1-2. He asserted claims for race discrimination, gender discrimination (sexual harassment), and retaliation. *Id*. However, as

---

[1] The court also notes that the sur-reply filed by Tate on March 9 (Docket at 50) dealt only with the judicial estoppel argument that had been presented by EMS. Since that argument was withdrawn, no other references to Tate's sur-reply brief are made during the court's analysis and discussion of the motion for summary judgment.

explained above, Tate has withdrawn his race discrimination claim, the parties have conceded that fact issues exist with regard to Tate's sex discrimination claim (and they are prepared to proceed to trial on that issue), and Tate's retaliation claim is the only claim on which EMS still seeks summary judgment.

EMS is a corporation that provides janitorial and other maintenance services for commercial buildings.  Brief in Support of Motion for Summary Judgment (" Brief in Support"), Docket at 34, p. 2. Tate was employed by EMS, in the position of custodian, beginning on August 16, 2002.  *Id*.  On August 26, 2002, Tate was promoted to the position of supervisor.  *Id*.  During the course of his employment, one of Tate's supervisors was Dawn Burban ("Burban").  *Id*.  At some point during his employment, Tate became involved in a sexual relationship with Burban.  *Id.  See also*, Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Brief in Opposition"), Docket at 39, p. 13.[2]  Tate alleges that on or about January 13, 2004, he ended this sexual relationship with his supervisor.  Brief in Opposition, p. 13.  On January 14, 2004, Tate was fired.  Brief in Support, p. 3.  Tate claims that the termination of his employment constituted retaliation, in that he was fired by Burban (or at her direction or request) after ending their intimate relationship.  Complaint, p. 2.  For its part, EMS does not state why Tate was fired.  The company does state, however, that its "decision to terminate Plaintiff's employment was made without regard to any classification or activity protected by Title VII . . . ." Answer to Complaint, Docket at 7, p. 3; *see also*, Amended Answer to Complaint, Docket at 31, p. 3.  EMS argues that the facts do not support any claim for retaliation under Title VII (*Id*., p. 11).

---

[2] EMS states that "it disputes whether this relationship even existed, but is accepting that fact for summary judgment purposes."  Reply Brief in Support of Defendant's Motion for Summary Judgment ("Reply Brief"), Docket at 46, p. 2.

Accordingly, it is not necessary under the facts and arguments before the court for EMS to provide an explanation for Tate's dismissal.[3]

## DISCUSSION

EMS argues that Tate cannot maintain a claim for retaliation "because he never opposed any conduct made unlawful by Title VII prior to his discharge."  Brief in Support, p. 11.  In order to establish a *prima facie* case of retaliation, a plaintiff must show that: 1) he engaged in statutorily protected expression; 2) he suffered an adverse employment action; and 3) there is a causal link between the protected expression and the subsequent adverse action.  *Murray v. Chicago Transit Authority*, 252 F.3d 880, 890 (7th Cir. 2001)**.**  In the present case, it is undisputed that Tate did not complain about his relationship with Burban to anyone at EMS other than Burban herself.  He did not "go over her head" and tell anyone in EMS management that he felt he was being sexually harassed, nor did he file any sort of grievance or raise any sort of protest within EMS.  Because of this, EMS argues that Tate fails to establish the first element of a *prima facie* case of retaliation since no one at EMS (other than Burban, who was allegedly participating in the sexual relationship) knew anything about that relationship.  EMS argues as follows:

> . . . Tate cannot prevail on his retaliation claim because he kept silent about this alleged misconduct and did not report it to anyone in EMS management.  Proof of the employer's knowledge of the alleged discriminatory conduct and corresponding protected activity "is implicit in the first element of this Circuit's prima facie case [of retaliation] under the indirect methodology."  *See Durkin v. City of Chicago*, 341 F.3d 606, 614 n. 4 (7th Cir. 2003).  This is because "[a]n employer cannot retaliate if there is nothing for it to retaliate against."  *Id.* at 615.

---

[3]  Tate claims that he was fired for "insubordination" after having gotten into a verbal dispute with Burban.  Brief in Opposition, p. 6.  EMS does not respond to this factual assertion in its briefing.

>EMS was completely unaware of the relationship and could not therefore have retaliated against Mr. Tate on that basis.

Brief in Support, p. 12.  Furthermore, EMS points out that even if one construes Tate's ultimate act of ending the relationship as an expression against sexual harassment, "[c]onsensual sexual relationships do not constitute unlawful activity under Title VII."  *Id.*, p. 11 (citing *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 668 (7th Cir. 2001).  "Accordingly, in ending his voluntary affair with Ms. Burban, Mr. Tate was not opposing conduct made unlawful under Title VII.  He therefore cannot rely on that activity to establish his *prima facie* case of retaliation."  *Id.*, pp. 11-12.

EMS's arguments appear imminently logical on their face.  However, Tate argues in response that "rebuffing a supervisor's sexual advances is a protected activity under Title VII.  If not, then a supervisor could immediately terminate the 'rebuffing' employee and get away with it.  Title VII would offer no protection to the discharged employee.  That cannot be the law."  Brief in Opposition, Docket at 39, p. 15.  Tate then goes on to present a discussion of this issue which is found in *Roberts v. County of Cook*, 2004 WL 1088230 (N.D. Ill., May 7, 2004).  *Id*.  In *Roberts*, the district court concluded that "refusing sexual advances is protected activity under Title VII."  The court explained that a "victim of harassment should not fear retaliation if she resists sexually predatory behavior by colleagues or supervisors."  Therefore, argues Tate, the fact that he went to Burban and broke off their relationship constituted protected activity.  The parties do not dispute that he was terminated immediately, which would mean that he establishes the second element of a *prima facie* case (adverse employment action).  As for the third element, that of a causal link between the protected activity and the adverse employment action, the parties do not spend any time debating the point.  That is likely because, if it is determined that

5

Tate's words and conduct constitute protected activity, the fact that he was fired immediately is sufficient to establish at least an inference of a causal link. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 603 (7th Cir. 2001) (citing *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998)). As a result of the foregoing, the viability of Tate's retaliation claim rests on whether his act of ending his relationship with Burban constitutes protected activity. On that point, the parties acknowledge that there is a split of authority among the courts that have addressed this issue. EMS readily admits this in its briefing. *See* Brief in Support, Docket at 34, pp. 12-14 (recognizing that "courts have split on the issue[.]"). Likewise, Tate "notes the division of authority among district courts as to whether rebuffing an advance can qualify as protected activity for purposes of a retaliation claim." Brief in Opposition, Docket at 39, p. 15.

     As mentioned above, Tate claims that the facts surrounding his alleged "protected activity" are as follows: On the day that he was fired, Burban "called [him] into the office and asked him if he had made a decision (about whether to continue the sexual relationship with Burban). . . . Tate told Burban his decision, 'That I wasn't messin' with her anymore.' . . . Burban immediately started screaming that she was 'gonna show' Tate, that he could leave, . . . and 'You're gonna lose your job." Brief in Opposition, Docket at 39, p. 7 (citing portions of Tate's deposition). Tate concludes that he "was fired by the sexual harasser immediately after deciding to refuse her sexual demands." *Id.*, p. 13.

     EMS counters that, even accepting Tate's version of that discussion as true, "Ms. Burban was not making, and therefore Mr. Tate was not rebuffing, a sexual demand or advance. He was simply calling off their consensual affair and in so doing indicating that he would not be open to any future sexual advances from Ms. Burban. Because consensual sexual relationships are not

against the law, ending such a relationship cannot be considered opposing unlawful behavior for Title VII retaliation purposes."  Reply Brief in Support, Docket at 46, p. 3.

It is true, as EMS contends, that the evidence does not demonstrate that Burban was making a "sexual advance" on the day she and Tate had this discussion (or argument, as the case may be).  But that is probably a distinction without a difference, at least with regard to the present motion for summary judgment.  The facts before the court are that Tate went to Burban's office; she was his supervisor; she asked Tate whether he intended to continue their sexual relationship; Tate told her that he was ending that relationship; Burban became angry and/or upset; and Tate was fired from his job.  Thus, the fact that Burban was not, at that precise moment, making any sexual advances towards Tate is not determinative of the issue of whether his words constituted protected activity.

Again, both parties concede that the Seventh Circuit Court of Appeals has not ruled on the issue of whether a plaintiff who rebuffs a supervisor's sexual advance has engaged in protected activity for purposes of bringing a retaliation claim.  In *Murray v. Chicago Transit Authority*, 252 F.3d 880 (7th Cir. 2001), the appellate court stated flatly that "we are able to find no Seventh Circuit precedent . . . supporting the premise that rejection of a sexual advance can serve as a statutorily protected activity for purposes of establishing a Title VII retaliation claim." *Murray*, 252 F.3d at 890.  The court went on to note that its examination of district court cases addressing the issue revealed a "division of authority . . . ." *Id*., fn. 2.  However, the court did not rule on the issue, since it held that the plaintiff in that case failed to establish a *prima facie* case of retaliation for other reasons.  At least one district court has noted that *none* of the circuit courts of appeal have ruled directly on this issue.  *See Wagner v. Burnham,* 2006 WL 266551

(N.D.N.Y.) *17.  In the *Roberts* decision, the district judge included in his order a lengthy citation list to district and appellate court cases on both sides of this issue.  *Id*. at * 4.  Tate cites to, and quotes extensively from, this district court opinion.  Naturally, the holding in *Roberts* supports Tate's position.  The court in *Roberts*, as well as the many courts that have issued holdings consistent with Tate's position, have done so based on the language of Title VII itself.  As Judge Kennelly wrote in *Roberts*: "The court agrees with those district judges who have found that refusing sexual advances is protected activity under Title VII.  Title VII makes it unlawful 'for an employer to discriminate against any of his employees . . . because *he has opposed any practice made an unlawful employment practice by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Id*. (italics in original).  Therefore, the court concluded, since sexual harassment in any form is clearly a "practice made unlawful" by Title VII, an employee who refuses a supervisor's sexual advances is engaging in "protected activity" as that term is used in the statute.  *Id*.

There is a factual distinction between the *Roberts* case and the case at bar.  In *Roberts*, the plaintiff apparently "repeatedly resisted [her supervisor's] sexually harassing behavior . . . ." *Id*.  In this case, the evidence is that Tate only "protested" the alleged harassment he was experiencing on the single occasion when he went to Burban's office and informed her that he no longer intended to continue their relationship.  And again, as EMS argues, Burban was not, at that particular moment, making any sexual advances toward Tate.  So the question becomes, does this single episode constitute "protected activity" as that phrase is contemplated by statute?

The facts before the court indicate that Tate decided to end his sexual relationship with

8

Burban, his supervisor (or, as EMS claims, his *alleged* relationship).  When he did so, he was fired virtually immediately.  Viewing the evidence in a light most favorable to Tate, it cannot be said that his retaliation claims fails as a matter of law.  Clearly, a jury may view this whole case in a very different way.  But that is neither here nor there for purposes of the present motion for summary judgment.  It is reasonable to infer from the facts as they are presented that Tate's action of breaking off his relationship with Burban was "protected activity" and, accordingly, comports closely enough with the language of Title VII that he should not have suffered the loss of his job for having done so.[4]  Again, according to Tate, he was attempting to break off a relationship, for whatever reason, with his direct supervisor.  After confronting her directly and doing so, he was terminated.

Tate's retaliation claim (as well as his sexual harassment claim) turns largely on the true nature of the relationship between him and Burban and their respective states of mind on the day Tate was fired.  But those are factual issues that cannot be resolved until a jury hears Tate's testimony (and, presumably Burban's) and is able to make credibility determinations.  For purposes of the present motion for summary judgment, Tate has established a genuine issue of

---

[4] EMS also argues that if any relationship really did exist between Tate and Burban, it was completely consensual and therefore not violative of Title VII.  *See* Brief in Support, Docket at 34, p. 11.  However, Tate counters that even a workplace relationship of this sort which begins as consensual does not preclude a sexual harassment claim if the employee later attempts to end the relationship and suffers an adverse employment action.  *See* Brief in Opposition, Docket at 39, pp. 13-14.  Both positions are legally correct.  However, as stated above, Tate's sexual harassment claim is not being challenged in the present motion.  Nonetheless, EMS takes the position that if the relationship was entirely consensual, then Tate would be unable to pursue a retaliation claim because when he broke off his relationship with Burban he was not attempting to end any unwelcome sexual advances on her part.  But Tate maintains that the relationship did in fact become unwelcome or unwanted, which is why he decided to end it.  By his reasoning, he was "refusing" sexual advances by Burban when he did so and suffered the ultimate adverse employment action as a result.

fact with regard to his claim of retaliation and EMS is not entitled to judgment in its favor on that claim at this point in the proceedings.

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment filed by Defendant Executive Management Services, Inc., is DENIED.

Date: May 12, 2006.

           /s/   William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana