# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| ALSHAFI TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CV-47-TS |
| | ) | |
| EXECUTIVE MANAGEMENT SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Plaintiff Alshafi Tate brought two Title VII claims against Defendant Executive Management Services, Inc.; one claim for sexual harassment and one for retaliation. On September 29, 2006, the jury returned a verdict in favor of the Plaintiff for his retaliation claim and found for the Defendant on the Plaintiff's sexual harassment claim. It awarded no damages to the Plaintiff. The Court now considers the extent to which the Plaintiff is entitled to the equitable relief claimed and to attorney's fees.

The Plaintiff filed a request for attorney's fees and supporting materials on October 18, 2006. On October 20, 2006, he filed an affidavit and evidence in support of his request for back pay and front pay. The Defendant responded on October 27, 2006, and on November 11, 2006, the Plaintiff replied.

**A.     The Plaintiff's Equitable Relief**

Where a party has been harmed by an unlawful employment practice, Title VII allows a court to grant equitable relief, "which may include, but is not limited to, reinstatement or hiring

of employees, with or without back pay, . . . or any other equitable relief as the court deems

appropriate." 42 U.S.C. § 2000e-5(g). Such relief should make the injured party whole.

*Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975).


**1.      *After-Acquired Evidence***

The Plaintiff claims that because he was unlawfully terminated, he lost wages of $20,618.

The Defendant responds that on March 30, 2005, it discovered that the Plaintiff lied on his

resume, and would have fired him had it been employing him at that time, and so, he is not

entitled to any back pay after that date. The Court agrees.

The Supreme Court held in *McKennon v. Nashville Banner Public Co.*, 513 U.S. 352,

362–63 (1995), that evidence acquired after the unlawful termination of an employee that would

have justified terminating the employee does not prevent recovery, but it does limit the

employee's right to collect back pay to the period before the discovery of the evidence. *Id.* ("The

beginning point in the trial court's formulation of a remedy should be calculation of back pay

from the date of the unlawful discharge to the date the new information was discovered.");

*Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999). The defendant carries the burden

of proving that it would have decided to terminate the employee because of the after-acquired

evidence. *McKennon*, 513 U.S. at 362–63 ("Where an employer seeks to rely upon after-acquired

evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the

employee in fact would have been terminated on those grounds alone if the employer had known

of it at the time of the discharge."); *Sheehan*, 173 F.3d at 1047–48.

The Defendant admitted at trial that he lied on his employment application about his

criminal past, and did not disclose that he had been convicted of attempted murder. The Defendant submitted the affidavit of Nancy Scheumann, the Defendant's Regional Vice President, stating that on March 30, 2005, as part of this litigation, the Defendant obtained a criminal background check of the Defendant. The background check disclosed that the Plaintiff had been convicted of attempted murder. Scheumann's affidavit states that the Plaintiff had not disclosed this conviction and that the Defendant would not have employed the Plaintiff to perform onsite janitorial work had they known of this conviction. The affidavit also states that the Defendant has a policy and practice of discharging employees who falsify their employment applications, and that Scheumann is unaware of any employee who has not been terminated when a false application has been discovered.

The Plaintiff argues that the Defendant's affidavit is insufficient to establish that the Defendant would have terminated the Plaintiff had it discovered he misrepresented his criminal history on his employment application. The affidavit is deficient according to the Plaintiff because Scheumann provided no instance in which the Defendant terminated an employee for lying on an employment application. However, the Plaintiff has cited no case requiring such a holding. The Seventh Circuit stated in *Washington v. Lake County, Ill.*, 969 F.2d 250 (7th Cir. 1992), that a defendant's uncontradicted affidavit can be sufficient to shift the burden to the plaintiff to present evidence suggesting that the defendant would not have fired an employee on the basis of the after-acquired evidence. *Id.* at 257; *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1123 (N.D. Ind. 1998) ("Absent direction from the Seventh Circuit to the contrary, we are obliged to follow the holding of *Washington* that a credible affidavit asserting that the employer would have fired the employee for the misconduct revealed by after-acquired evidence is

sufficient to meet the employer's burden under *McKennon*.").

The Court finds Scheumann's affidavit to be credible. No evidence has been offered to contradict Scheumann's statement that the Defendant's policy and practice is to terminate those who misrepresent facts on their employment applications, and it is reasonable to believe that the Defendant would not want to hire a person who had been convicted of attempted murder to perform onsite janitorial work. Therefore, the Court finds that the Plaintiff's damages are limited to the period from his termination, January 13, 2004, to the date the Defendant learned he was convicted of attempted murder, March 30, 2005.

Within this period, the Plaintiff calculates his back pay to be $7,830. During the 62 weeks between January 13, 2004, and March 30, 2005, assuming the Plaintiff would have worked 40 hours a week at $8 an hour, the Plaintiff would have earned $19,840. After the Defendant terminated the Plaintiff, he collected unemployment compensation from January 17, 2004, to May 22, 2004, in the amount of $3,610. He also obtained a job in February or March of 2004 with Just Floors earning $150 a week. The Plaintiff calculates his earnings from Just Floors to be $8,400 from the start of this job until March 30, 2005. Subtracting the $8,400 he earned from Just Floors and the $3,610 he received as unemployment compensation from the $19,840 he would have received had he not been terminated from the Defendant, the Defendant suffered a loss of $7,830 as a result of his unlawful termination. The Defendant does not dispute this calculation, and the Court accepts it as the proper calculation of the Plaintiff's back pay.

### 2.    *Mitigation*

The Defendant argues this amount should be reduced because the Plaintiff failed to

mitigate his damages. The Defendant bears the burden of proving the Plaintiff's failure to mitigate by showing the plaintiff "failed to exercise reasonable diligence to mitigate his damages" and that "there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

According to the Defendant, the Plaintiff's lack of diligence in finding a new job is demonstrated by the Plaintiff's work history after being terminated. After being terminated by the Defendant, he sought and collected unemployment benefits. In February or March he took a job working part time with Just Floors. His unemployment benefits ran out in May 2004, and in July 2004, he applied with the Social Security Administration for disability benefits. At trial he said his disability was a mental disorder, but the Defendant argues he was fit to work. His application for benefits was denied in April 2005, and in July 2005, he found work with Bob Evans working 28 hours a week. The Defendant also points to an interrogatory in which the Plaintiff was asked "Have you applied for employment of any kind or character from January 14, 2004 to the present?" (Def. Ex 1, DE 96-2.) The Plaintiff responded that he orally applied for a job with Just Floors and was offered a job as a floor technician. He listed no other employment applications. The Defendant claims that these facts show the Plaintiff did not want to work, and did everything possible to avoid having to get a job.

The Court is not convinced that the Plaintiff was as unmotivated as suggested by the Defendant or that he could have found comparable work had he been more diligent. The Plaintiff submitted an affidavit stating that his answer to the interrogatory was inaccurate because he understood the question to refer to successful job applications. The Plaintiff submitted with his

affidavit records from the Indiana Department of Workforce Development detailing his efforts to obtain employment while he received unemployment benefits. To obtain unemployment benefits, he was required to submit vouchers showing he was looking for a job, and the records are based on these submissions. The records state that the Plaintiff reported applying for work with three employers a week at various businesses, such as retail stores, hotels, and restaurants. Most are listed as not hiring. The Court finds the Plaintiff's explanation of his activities to be credible, and along with the fact that he did find one job, sufficient to show that he used reasonable diligence to find comparable work.

More importantly, the Defendant has not shown that greater diligence on the Plaintiff's part would have made it reasonably likely he would have found comparable work sooner. Regarding this point, the Defendant only states that Defendant's co-workers found full-time employment after leaving employment with the Defendant. However, it is not clear if they have similar criminal records to that of the Defendant hampering their employment prospects. The Defendant states it would not have hired the Plaintiff because of his criminal record but ignores his criminal record in arguing he could have found another job. No evidence has been submitted tending to show that there are potential employers willing to give full time work to one with job skills similar to the Plaintiff's, who has such a serious criminal record. For these reasons, the Court finds that the Defendant has not shown that the Plaintiff failed to mitigate his damages.

**3.      *Defendant's Argument on the Equities***

The Defendant's remaining argument against back pay—that various wrongful acts by the Plaintiff tip the equitities against any award of back pay—merits only brief remarks. The fact

that the Plaintiff lied on his resume does not bar him from collecting back pay. *McKennon* rejected the application of the unclean hands doctrine where Congress authorizes broad equitable relief to serve important national policies, and applying the doctrine here would undermine the objective of punishing employers that retaliate against employees opposing unlawful employment practices. *McKennon*, 513, U.S. at 361–63. The Defendant alleges other wrongful acts of the Plaintiff: the Plaintiff was paid cash for his work for Just Floors, the Plaintiff lied about a disability to collect disability benefits, and he told the Indiana Department of Workforce Development he was unemployed while he was employed by Just Floors to collect unemployment benefits. Even if the Defendant's allegations are all true, the Defendant does not explain why these facts should excuse the Defendant from paying the Plaintiff for his lost wages. The alleged bad acts do not in any way justify or mitigate the Defendant's fault for retaliating against the Plaintiff, and did not harm any interest of the Defendant. Equity does not require reducing the Plaintiff's back pay.

The Court finds that an award of $7,830 for back pay for the period between January 13, 2004 and March 30, 2005, is appropriate.

**B.      Plaintiff's Attorney's Fees and Costs**

Under Title VII, a prevailing party is entitled to reasonable attorney fees. 42 U.S.C. § 2000e-5(k). "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). The jury found that the Plaintiff was terminated for opposing an unlawful employment practice and this Court has awarded the Defendant back pay for the 62 weeks following his termination, and so the

Plaintiff has obtained relief on the merits of his claim. Therefore, the Plaintiff is the prevailing party.

Because the Plaintiff is the prevailing party, the Court must go on to determine what amount would be a reasonable attorney's fee. The starting point is to determine the lodestar amount: a reasonable hourly rate for the attorney multiplied by the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In this case, the Plaintiff submitted that the lodestar amount was $59,317.50. The Defendant does not argue with the hourly rate used to calculate that amount, or point to any specific time in the Plaintiff's submissions as unreasonable, but it does ask the Court to adjust the lodestar amount downward to take account of the Plaintiff's limited success.

This lodestar amount may be adjusted upward or downward based on other considerations, "including the important factor of the 'results obtained.'" *Id.* at 434. The result obtained is especially important where, as here, "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Two considerations must be addressed in determining whether to adjust an award to take account of the limited success: the relatedness of the claims on which the Plaintiff succeeded to those on which he did not succeed, and whether the level of success makes the hours expended a satisfactory basis for making a fee award. *Id.*

Where as here, the Plaintiff's successful and unsuccessful claim share common facts and are based on closely related legal theories, the court "focus[es] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* In this case, "the fee award should not be reduced simply because the

8

plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* "If, on the other hand, a plaintiff has achieved only partial or limited success, [the lodestar amount] may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. There is no precise formula for making these determinations. *Id.*; *Bryant v. City of Chi.*, 200 F.3d 1092, 1102 (7th Cir. 2000) ("*Hensley* does not require the application of a precise rule or formula, leaving fee reduction to the discretion of the trial court.").

The Court's opinion is that the lodestar amount is reasonable and not excessive, despite the fact that the Plaintiff lost on his sexual harassment claim, did not receive any compensatory or punitive damages, and collected only $7,830 in back pay. The Plaintiff's attorney obtained excellent results despite having to deal with challenging facts. The Plaintiff's attorney did not needlessly add to the litigation or present any unreasonable arguments.

The fact that the Plaintiff lost his sexual harassment claim does not make the lodestar amount excessive, as there are few facts or issues relating to that claim that were not relevant to the retaliation claim. Both claims centered on the events that occurred at the time the Plaintiff was terminated. The Defendant points to nothing that the Plaintiff's attorney did with regard to the unsuccessful claim that was not relevant to the successful claim, and the Court is not aware of any. Also, summary judgment was sought only for the claim on which the Plaintiff won, and so no extra time was wasted addressing the Plaintiff's losing claim at that stage.

The lodestar is also not made excessive by the Plaintiff's failure to collect more than $7,830 in back pay. The Plaintiff never requested a specific amount, and did not spend an unreasonable amount of time on the issue of punitive or compensatory damages. The Court saw

little puffing or exaggeration of the harm suffered by the Plaintiff.

Finally, the Court notes that "[a]ttorney's fee awards in civil rights cases are designed 'to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.'" *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 975 (N.D. Ind. 2002) (quoting *Riverside v. Rivera*, 477 U.S. 561, 578 (1986)). "It is impossible, unless there is an expectation of a fee award (and often not then), to interest a competent lawyer in bringing a suit in federal court to recover a small amount of damages unless the plaintiff is a rich person." *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997). The Seventh Circuit suggested in *Hyde* that where a plaintiff brings a small claim, and the claim is tried accordingly, if the plaintiff wins, "he should not be disqualified from an award of attorneys' fees without which such a case would never be brought." *Id.* There is a cost to bringing such a claim to trial that exists regardless of the amount of damages sought, *see Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000), and the amount sought is a reasonable fee for litigating a civil rights claim of this nature through trial. The fact that the Plaintiff did not win on all of the issues or as much as he sought does not make the Plaintiff's fee excessive or unreasonable in this case.

The Plaintiff's result was excellent for the Plaintiff in that the jury agreed that the Defendant retaliated against him for engaging in protected conduct, and he collected the amount in damages that makes him whole. The Plaintiff's attorney did not do more than was reasonably necessary for the Plaintiff to prevail.  Under these circumstances, the Court does not see the Plaintiff's lodestar amount as excessive, and declines to adjust it downward.

There is no dispute as to the Plaintiff's calculation of costs, which is stated at $850.44.

**ORDER**

The Court GRANTS in part and DENIES in part the Plaintiff's motions for back pay and

front pay [DE 95] and for attorney's fees [DE 94] and AWARDS the Plaintiff $7,830 for back

pay, and $59,317.50 as a reasonable attorney's fee. The Plaintiff is also entitled to $850.44 in

costs.

SO ORDERED on January 26, 2007.

<u>    S/ Theresa L. Springmann        </u>
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

11