UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ALSHAFI TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CV-47-TS |
| | ) | |
| EXECUTIVE MANAGEMENT SERVICES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

This matter is before the Court on the Defendant's Motion for Judgment as a Matter of Law or a New Trial. The Defendant filed a motion for a directed verdict on September 28, 2006. The jury returned its verdict on September 28, 2006, and determined that the Plaintiff failed to prove his sexual harassment claim. However, the jury found the Defendant liable for retaliation. The jury awarded the Plaintiff no compensatory damages. The Court issued its ruling denying the motion for directed verdict on October 12, 2006.

The Defendant presents the same two arguments in its second motion for judgment as a matter of law as it did in its first motion: first, that the Plaintiff did not oppose conduct made unlawful by Title VII, and second, that the Defendant performed an independent investigation adequate to prevent it from being liable for its employee's retaliatory motive. The Defendant has supplemented its previous argument with additional reasoning and case law. The Court sees nothing to justify altering its decisions. The Defendant also asks for a new trial; the Court denies that motion as well.

A.      **Motion for Judgment Notwithstanding the Verdict**

A judgment as a matter of law is granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 149 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50.

The district court should "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2529 (2d ed. 1995)).

1.      ***Whether the Plaintiff Opposed an Unlawful Employment Practice***

The Defendant argues that the Plaintiff did not oppose statutorily protected activity

2

because ending a consensual sexual relationship is not opposition to an unlawful employment practice. The Defendant does not address the reasoning of those cases that find rebuffing sexual advances to constitute opposition to unlawful conduct, or the reasoning behind this Court's previous opinions addressing this issue. (Opinion, May 12, 2006, DE 55; Opinion, October 12, 2006, DE 93.) The Court will briefly summarize its previous holdings.

A straightforward reading of the statute's text requires finding that rebuffing sexual harassment can in some situations be considered opposition to an unlawful employment practice. The applicable subsection states "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). It is an unlawful employment practice to threaten a person with termination if he or she refuses to continue in a sexual relationship. *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1226 n.7 (7th Cir. 1997) ("[H]arassment, occurs when the receipt of benefits or the maintenance of the status quo is conditioned on acquiescence to sexual advances.") When an employee is given an ultimatum that continued employment depends on continuing a sexual relationship, and the employee says "no more," that employee could reasonably be understood to be opposing continuing the sexual relationship and to be opposing a change in the terms of his employment. As the Plaintiff notes in his brief, "Tate not only refused Burban's ultimatum to have sex, he did so under the express threat of termination by Burban." (Pl Br. 5, DE 107.)   When the protesting employee is terminated, the termination could be motivated by the opposition to the change in employment terms, the opposition to the sexual relationship, or both. The retaliation claim intertwines with the harassment claim, but they are not identical.

Those courts holding that rebuffing sexual harassment is not opposition to an unlawful practice are not convincing. For example, the court in *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437 (S.D.N.Y. 1996), held that "where the alleged 'protected activity' consists simply of declining a harasser's sexual advances," declining advances is not "protected activity" because otherwise, "every harassment claim would automatically state a retaliation claim as well." *Id.* at 438–39. The Court disagrees. As stated above, opposing the employment practice of sexual harassment and declining a sexual invitation are distinct, even though they may be intertwined. The court in *Rashid v. Beth Israel Med. Center*, 1998 WL 689931, *2 (S.D.N.Y. 1998), stated that such a retaliation claim is duplicative and unnecessary, and runs the risk of confusing a jury. The concerns about the retaliation claim being duplicitive, unnecessary, or confusing are not good reasons to ignore the plain text of the statute.

The jury in this case found that the elements of sexual harassment were not satisfied, but that the Defendant retaliated against the Plaintiff for opposing an unlawful employment practice. The jury could have reasonably found from the evidence that the Plaintiff proved that he was terminated because he opposed the unlawful practice of making employment contingent on sex, and that the Plaintiff did not prove the elements of his harassment claim.

For these reasons, the Court declines to alter its decision regarding the Plaintiff's retaliation claim.

### 2.     *Whether the Defendant had Knowledge Sufficient to Justify Employer Liability*

The Defendant argues that it had no knowledge of Ms. Burban's conduct toward the Plaintiff and therefore, cannot be liable for her retaliation. The Defendant's first motion for

4

judgment as a matter of law made this same argument, and this Court held that the Seventh Circuit's holding in *Byrd v. Illinois Department of Public Health*, 423 F.3d 696 (7th Cir. 2005), foreclosed the Defendant's argument because it held that an employer could be liable for the retaliatory motive of one who provided information that the decision maker relied on to make the adverse employment decision. *Id.* at 711–12.

The Defendant now argues that this case is different from *Byrd* because in this case, the decisionmaker contacted a disinterested witness who provided information corroborating the biased subordinate, Dawn Burban. In this case, the Defendant's decisionmaker, Nancy Scheumann, testified that she received a report from Burban that the Plaintiff was insubordinate and refused a work assignment. The Defendant states in its brief that Scheumann also testified that Dan Hudson, the security guard at the place Burban and Tate worked, "relayed to her that the argument between Mr. Tate and Ms. Burban related to Mr. Tate's refusal of a specific work assignment on the night in question." (Def. Br. 10, DE 105.)  The Defendant stated that Hudson confirmed this fact. Hudson did not confirm Scheumann's testimony. Hudson stated that he may have spoken to an employee of the Defendant's other than Dawn Burban about a month after the incident. However, this conversation concerned whether he would testify for the Defendant. Hudson said he was told he may have to give a prepared statement. When asked whether he spoke to someone from the Defendant the very next day, Hudson said it was possible, but he did not remember. He also stated that he never discussed the substance of what he saw or what the argument was about. This testimony contradicts Scheumann's statement that she called Hudson and heard his independent account of the events. Therefore, the Court accepts the testimony to favor the Plaintiff, and assumes no conversation between Scheumann and Hudson took place

regarding the incident between Burban and Tate. If the jury believed Hudson and not Scheumann, and believed that there was no independent investigation, the jury could find that Scheumann acted as a cat's paw for Burban's retaliatory motive.

This would be the end of the Court's analysis, but for a recent decision of the Seventh Circuit in *Brewer v. Board of Trustees of University Illinois*, 479 F.3d 908 (7th Cir. 2007), cited by the Defendant. The *Brewer* court addressed a case involving a university employee fired for altering his parking permit. The employee alleged that his superior gave him permission to do so, and, because of her racial bias, she did not tell the decisionmaker this information when he was terminated for altering his tag. However, the employee did not talk to the decisionmaker at all about the events or about the superior's bias, so that the decisionmaker was never aware of the superior's alleged bias. The decisionmaker stated that she terminated the employee because he altered the parking tag. She inspected and verified for herself that the tag was altered. *Id.* at 913–14. The Defendant argued that it could not be liable for the bias of the superior because the decisionmaker did an independent investigation and did not act as a rubber stamp of the biased superior's attempt to have the employee terminated.

This case is similar to *Brewer* in that it involves a biased employee without authority to terminate using influence over a decisionmaker to have the employee terminated for a particular instance of misconduct. The *Brewer* court attempted to clarify when an employer could be liable in such a situation:

> where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker. It does not matter that in a particular situation much of the information has come from a single, potentially biased source, so long as the decision maker does not artificially or by virtue of her role in the company limit her investigation to information from that source.

*Id.* at 918 (citations removed). The court admitted that "our approach to Title VII cases involving an employee's influence over a decision maker has not always been completely clear. Our opinions have sometimes suggested that not only significant influence, but any influence over an employment decision is sufficient to impose Title VII liability on an employer." *Id.* at 919. The court limited these cases to contexts other than those concerning "an employee's discipline for particular misconduct." *Id.* Applying the narrowed concept of "significant influence," the *Brewer* court went on to hold that the biased superior did not exercise significant influence over the decisionmaker by withholding the fact that she gave the employee permission to alter the parking permit. Because the employee, without reason, did not attempt to bring his side of the story to the decisionmaker, the decisionmaker's examination of the parking pass qualified as an independent investigation eliminating the possibility of employer liability. *Id.*

Two differences distinguish the instant case from *Brewer*. First, taking into account the facts that favors the Plaintiff, there was no independent investigation. The Defendant relies on its claim that Scheumann called Hudson to confirm Burban's claims about the work incident, but that testimony is contradicted by Hudson. Second, the Plaintiff testified that he attempted to talk to his superiors, but was prevented from doing so. In this case, there was sufficient evidence for the jury to find that Scheumann was Burban's rubber stamp, and that Scheumann failed to conduct any independent investigation.

**B.     Motion for a New Trial**

Federal Rule of Civil Procedure 59 allows a court to grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore

been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Rule 61 states that

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61. In other words, "[i]n order to receive a new trial, the defendant must show that the error was substantial enough to deny him a fair trial." *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir. 1986).

"The court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2805 (2006). A prejudicial error of law may justify a new trial. *Id.* A new trial may also be granted if the verdict is against the weight of the evidence. *Id.* In determining whether to grant a new trial, "a jury verdict must be accorded great deference." *Foster v. Cont'l Can Corp.*, 783 F.2d 731, 735 (7th Cir.1986). Also, "unlike a J.N.O.V. motion, the judge may consider the credibility of the witnesses, the weight of the evidence, and anything else which justice requires." *Spanish Action Comm. of Chi. v. City of Chi.*, 766 F.2d 315, 321 (7th Cir. 1985).

The Defendant argues that the jury's verdict was against the weight of the evidence, and could only be reached by making an extraordinary number of inferences. The Court disagrees. The Plaintiff testified that he was given an ultimatum: continue the relationship with Burban or be fired. He ended the relationship. He testified that Burban told him to leave and he was fired

8

the next day. This story was not incredible, and the jury was not out of line in crediting the Plaintiff's testimony. Scheumann's testimony was rather reluctant, and not especially convincing. Her testimony abut the investigation contradicted that of Hudson. The jury's verdict is entitled to deference, and allowing it to stand is not unjust. The Defendant's motion for a new trial is denied.

## ORDER

The Plaintiff's motion for Sur-Reply [DE 112]  is DENIED because it is unnecessary. The Defendant's motion for judgment or new trial [DE 104] is DENIED.

SO ORDERED on June 4, 2007.

/s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT